UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| DARLENE DORGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 08-56-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ALLSTATE INSURANCE CO., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

After being fired as a staff claims service adjuster, Plaintiff Darlene Dorger asserted age discrimination and promissory estoppel claims against her former employer, Defendant Allstate Insurance Company. [Record No. 1] Allstate has filed a motion for summary judgment, which identifies a legitimate, nondiscriminatory reason for firing Dorger. [Record No. 32] While Dorger can establish a *prima facie* case of age discrimination, she has not presented sufficient facts to demonstrate that Allstate's reason for firing her was a pretext for discrimination. [Record No. 35] In addition, Dorger's promissory estoppel claim is unavailing. Therefore, Allstate's motion for summary judgment will be granted as to all claims asserted by Dorger.

## I. Background

Dorger was employed by Allstate from February 1978 until she was fired on March 7, 2006. At the time she was fired, Dorger worked as a staff claims service adjuster and on a rotational/substitute basis at Allstate's drive-in location in Northern Kentucky. The Northern

Kentucky drive-in location was staffed by Brian Maegly, a full-time drive-in adjuster, and by Dorger or Scott Winkler who substituted for Maegly in his absence. A drive-in adjuster prepares estimates for vehicles brought in by customers, takes pictures of damages, searches for after-market parts, reviews estimates with customers, and if applicable, issues checks.

Allstate typically schedules 30-minute appointments for drive-in customers, and adjusters are expected to complete the customer's estimate within that time. However, if a car is more than ten years old and has moderate to severe damage, a sixty-minute appointment can be booked. This is referred to as "double-booking" an appointment. Generally, inside adjusters were responsible for making drive-in appointments. As a result, there were no written rules for drive-in adjusters regarding scheduling drive-in appointments.

After the 2002 merger of the Lexington and Louisville market claims offices ("MCO"), Todd Thomas, a market claims manager, and Matt Nally, a frontline process expert, learned that the Lexington MCO allowed Dorger, Maegly, and Winkler to schedule appointments. Because the Louisville MCO did not allow drive-in adjusters to schedule their own appointments, the access level for Dorger, Maegly, and Winkler was changed to prohibit them from accessing the computer scheduling system. However, their access was later returned when Maegly and Winkler convinced managers that it was necessary to perform their jobs.

Allstate claims that Thomas agreed to return scheduling authority for the limited purpose of allowing Dorger, Maegly, and Winkler to reschedule appointments for customers who missed their scheduled appointment. Further, Allstate claims that Dorger, Maegly, and Winkler were specifically instructed not to double-book appointments or set their own appointment schedules.

However, Dorger disputes these claims and alleges that the adjusters were never told that they could not double-book. Conversely, she believes that double-booking was necessary to better serve customers who showed-up late for appointments and to allow extra time to complete the estimation process for vehicles with significant damage.

At some point after the three drive-in adjusters' scheduling authority was reinstated, Thomas requested that Nally investigate why appointment slots were filling-up faster than expected at the Northern Kentucy drive-in. Nally reported to Thomas that Dorger, Maegly, and Winkler were misrepresenting appointments, scheduling appointments for customers who never materialized, and scheduling appointments using the claim numbers of customers already seen at the drive-in. Thomas reported the matter to his manager Pam Overton.. At this point, human resources consultant Jennifer Davis, her manager Willa Hunt, and performance leader Mike Huffaker became involved.

In February 2006, Nally, Thomas, Huffaker, and Davis met with Dorger, Maegly, and Winkler to discuss the situation. Allstate claims that Dorger could not explain her actions during this meeting. Conversely, Dorger claims she was "blind-sided" by the meeting, and that she did not have the necessary documents to explain her reasons for double-booking specific appointments. During the meeting, Dorger denied she was ever told that rules about double-booking had changed and further denied she was ever told not to double-book appointments.

Following this meeting, Dorger was placed on paid leave until an appropriate discipline could be determined. Nally, Thomas, and Davis initially suggested that Dorger receive a formal reprimand and a "Job in Jeopardy" notice. However, after further investigation, Davis concluded

that Dorger intentionally falsified company documents. Further, Davis believed that these were not innocent mistakes "because when the appointments did not take place, or when the estimate was completed, she didn't go back and cancel the appointments and open up the schedule." [Davis Depo., p. 32] The management group eventually recommended that Dorger and Winkler be fired for intentionally misusing the scheduling system. This recommendation was reviewed and approved by additional management.

On March 7, 2006, Dorger and Winkler were fired for failing to follow procedure with booking appointments and for falsifying company documents in violation of Allstate's Code of Ethics. Maegly resigned during the investigation. At the time of their termination/resignation Dorger was 46, Winkler was 44, and Maegly was 47. To handle the duties formerly performed by Dorger, Maegly, and Winkler, Allstate hired Deborah Batz, age 31, and transferred Martin Russell, age 47, to the area.

On March 26, 2008, Dorger filed a Complaint alleging that Allstate discriminated against her on the basis of her age in violation of her civil rights under the KRS § 344.010, *et. seq*. She also asserted a claim for promissory estoppel. Allstate contends that it is entitled to summary judgment on the age discrimination claim because Dorger was fired for a legitimate, nondiscriminatory reason. Further, Allstate contends that Dorger cannot establish a promissory estoppel claim, so summary judgment also should be granted in its favor on this issue.

## II. Age Discrimination

State age discrimination claims under KRS § 344.040(1) are analyzed in the same manner as claims filed under the federal Age Discrimination in Employment Act. *Allen v. Highlands*

*Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir. 2008); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005); *Harker v. Federal Land Bank*, 679 S.W.2d 226, 229 (Ky. 1984). Thus, to succeed on her state claim without direct evidence of discrimination, Dorger must satisfy the burden-shifting test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and modified by *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–56 (1981). *See Grosjean v. First Energy Corp.*, 349 F.3d. 332, 335 (6th Cir. 2003). This test requires a plaintiff to first establish a *prima facie* case of discrimination. The defendant may then rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Finally, the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation. *Id.*

### A. Dorger Can Establish a *Prima Facie* Case of Age Discrimination.

Dorger can establish a *prima facie* case of age discrimination. It is undisputed that she was qualified to be an adjuster and that she was over the age of 40 when fired. Therefore, Dorger need only demonstrate that she was replaced by a significantly younger person. *Grosjean*, 349 F.3d at 335. Batz is 15 years younger than Dorger and an age difference of ten or more years has generally been held as sufficient to meet the "significantly younger" requirement. *Id.* at 336–37. Additionally, when viewed in a light most favorable to Dorger, there is sufficient evidence to establish that she was replaced by Batz. For the purposes of an age discrimination claim, a "person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* at 336 (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

Immediately after the firings and resignation, a number of existing Allstate auto adjusters assumed the former duties of Dorger, Maegly, and Winkler. It is clear that these auto adjusters could not be considered replacements for the purpose of an age discrimination claim, because a person is not replaced "when the work is redistributed among other existing employees already performing related work." *Id.* However, on April 24, 2006, less than two months after Dorger was fired, Allstate hired Batz to assist in handling the duties formerly performed by Dorger, Maegly, and Winkler. When Russell transferred to Northern Kentucky several months later, he and Batz split the work.

Allstate's claim that Batz did not replace Dorger is not persuasive. Allstate argues that because Batz and Russell took over duties previously performed by three individuals, "it is difficult to conclude that either of them 'replaced' Dorger." Further, Allstate notes that Batz eventually became the Northern Kentucky full-time drive-in adjuster, and Russell became primarily a field adjuster who substituted at the drive-in less than once a month. Therefore, Allstate claims that if anyone should be considered Dorger's replacement, it should be Russell. However, Allstate cites no authority in support of its argument that Batz should not be considered a replacement because she eventually performed duties that were not exactly the same as those performed by Dorger. Batz was initially hired to handle work previously performed by Dorger. Thus, under the definition provided in *Grosjean*, Batz replaced Dorger. *Grosjean*, 349 F.3d at 336. Because there is sufficient evidence to establish that Batz replaced Dorger, she has

established a *prima facie* case of age discrimination, which "in effect creates a presumption that [Allstate] unlawfully discriminated against [Dorger]." *Burdine*, 450 U.S. at 254.[1]

**B. Legitimate, Nondiscriminatory Explanation for Firing**

Although Dorger can establish a *prima facie* case for age discrimination, Allstate has met its burden of production and thus has rebutted the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its actions. *Burdine*, 450 U.S. at 255; *Grosjean*, 349 F.3d at 335. As previously noted, Allstate asserts that Dorger was fired after an internal investigation showed that she failed to follow procedure when booking appointments and that she falsified company documents in violation of Allstate's Code of Ethics. This constitutes a legitimate, nondiscriminatory reason because it is a reason supported by admissible evidence, "which *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993) (emphasis original)).

**C. Dorger Cannot Demonstrate Allstate's Explanation was Pretextual.**

Because Allstate has rebutted the presumption created by the establishment of a *prima facie* case, Dorger must produce sufficient evidence from which a jury could reasonably reject Allstate's explanation as being a pretext for discrimination. *Allen*, 545 F.3d at 396. *See also Burdine*, 450 U.S. at 256 (citing *McDonnell Douglas*, 411 U.S. at 804–05). The Sixth Circuit

---

[1] Since Dorger has established a *prima facie* case of age discrimination by demonstrating that she was replaced by a significantly younger person, the Court need not address her alternative argument that the disparate treatment of similarly situated employees demonstrates a *prima facie* case of age discrimination.

has thoroughly described the ways a plaintiff can demonstrate such a pretext in an age discrimination case:

> To make a submissible case on the credibility of [her] employer's explanation, the plaintiff is required to show by a preponderance of evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge. The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false." The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing [the] plaintiff and, if shown, provide an evidentiary basis for . . . the factfinder to infer illegal discrimination from the plaintiff's *prima facie* case.
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup.

*Allen*, 545 F.3d at 396 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Dorger's argument that Allstate's explanation is merely a pretext for discrimination falls into all three categories. However, none of these arguments are sufficient to rebut Allstate's legitimate, nondiscriminatory explanation for firing Dorger.

First, Dorger argues that Allstate has not proffered any evidence that any employee ever informed her of rules forbidding double-booking. She concludes that this failure to produce any

evidence that she was informed of the rule Allstate asserts she intentionally violated is, by itself, enough for a jury to determine that Allstate's articulated reason for her firing was pretextual. Essentially, she argues that Allstate's explanation is factually false because she did not *intentionally* violate company policy. However, as the Sixth Circuit explained in *Allen*, when determining whether a plaintiff has raised a genuine issue of material fact as to pretext based on a factually false explanation, the proper inquiry is not whether the plaintiff *actually* violated company policy, but whether the employer had an honestly held belief that the plaintiff violated company policy. *See Allen*, 545 F.3d at 398. Similarly, the Sixth Circuit has also explained that the plaintiff's "disagreement with the facts uncovered in [the employer's] investigation does not create a genuine issue of material fact that would defeat summary judgment as long as an employer has an honest belief in its proffered nondiscriminatory reason." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007). As the court explained in *Michael*:

> [T]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. We do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

*Id.* at 598–99 (internal citations and quotations omitted).

The evidence in the record demonstrates that Allstate "reasonably relied on the particularized facts before it" when it fired Dorger. As discussed above, an internal investigation of booking practices in the Northern Kentucky drive-in uncovered evidence of what Allstate concluded to be improper double-booking and falsification of company documents. A hearing was held and Dorger was unable to explain her actions. After the hearing, Davis looked into the

issue further and determined that the double-booking was intentionally done. Based on these facts, a recommendation that Dorger be fired was made and approved.

Dorger presents no evidence that Allstate acted unreasonably or without an honest belief that company policy had been violated. Further, her claim that "[b]ecause a jury could find the testimony of Allstate's witnesses incredible, Allstate is not entitled to judgment as a matter of law on the question of pretext" is without merit. She bases this claim on three things: (1) Davis' report stated that Dorger had been told about the rule changes regarding double-booking, but she and none of the managers remember having this conversation; (2) Davis listed six people as possessing knowledge of the facts and circumstances surrounding the firing when answering Dorger's interrogatories, yet Davis named two additional people as possessing this knowledge in her deposition testimony; and (3) Davis' report stated that everyone unanimously agreed to the termination, but failed to note that Nally and Thomas had initially opposed termination. However, as previously discussed, an "employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it *at the time the decision was made*." *Michael*, 496 F.3d at 598–99 (emphasis added). Thus, the fact that Davis gave different responses in her interrogatories and deposition is irrelevant.

While the other two points may cause a jury to question Davis's credibility, Dorger has not shown how Allstate's reliance on Davis' report would be unreasonable or how Davis' possibly incredible statements make Allstate's firing decision ill-considered or ill-informed. As the Sixth Circuit explained in *Michael*, "disagreement with the facts uncovered in [the employer's] investigation does not create a genuine issue of material fact that would defeat

summary judgment as long as an employer has an honest belief in its proffered nondiscriminatory reason." *Id.* at 598. While Dorger has raised an issue with the underlying facts in the investigation, there is no evidence suggesting that Allstate did not have an honest belief in the report's conclusion that Dorger violated company policy.

Second, Dorger argues that Allstate's articulated reason is an insufficient motive to fire her. Dorger supports this argument by pointing out what she claims is disparate treatment between herself and similarly situated, significantly younger employees. Specifically, she notes that Batz was not fired even though she claims that Batz also falsified documents. In addition, Dorger notes that Davis was not fired even though she asserts that Davis materially misstated the record in her termination report when she "specifically and unequivocally stated that four separate managers had told Ms. Dorger of the changes in rules regarding 'double-booking.'"

Dorger's claim that pretext is demonstrated by disparate treatment also is without merit. She is not similarly situated with Davis, and Davis' and Batz's alleged conduct is not "substantially identical" to the conduct Allstate claims led to Dorger's firing. While an exact correlation between a plaintiff and a comparative employee is not required to be considered "similarly situated," the Sixth Circuit does require that similarly situated employees be "similar in all *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis original). Dorger has not presented any facts demonstrating how she, as an adjuster, and Davis, as a human resources consultant, are similar in all relevant aspects. Their positions at Allstate were completely different.

In addition, since Dorger claims that disparate treatment demonstrates Allstate's explanation is pretexutal, she needs to demonstrate that Batz was not fired even though she "engaged in substantially identical conduct" to that which Allstate contends motivated Dorger's firing. *See Allen*, 545 F.3d at 396 (quoting *Manzer*, 29 F.3d 1083–84). However, there is no evidence in Davis' personal record suggesting that she has ever been accused of failing to follow booking practices or of falsifying company documents in violation of Allstate's Code of Ethics. *See* [Record No. 35, Ex. B]

Similarly, Dorger has not demonstrated that she and Batz were treated differently for substantially identical conduct. Dorger claims that Batz "received at least two informal warnings about untimely or even false documentation without facing termination." The basis for this claim is the following note in Batz's record: "The phone numbers Debbie indicated she called do not match the phone numbers in our file." [Record No. 35, Ex. A, p. 4087–88] Despite Dorger's claim, there is no evidence suggesting that this comment is an accusation of document falsification. Further, even assuming that this comment was such an accusation, Dorger has not demonstrated how falsifying documents by putting down the wrong phone number is "substantially identical" to falsifying documents regarding appointment booking.

Finally, Dorger argues that if jurors heard her explanations for why she double-booked appointments in the instances identified by Allstate, they could conclude that she did not act dishonestly or without integrity. In her response, Dorger describes six instances where she double-booked customers or set up their drive-in appointments and explains why she believes her actions were appropriate on each occasion. Dorger argues that these explanations call into

question whether double-booking was the actual motivation behind her firing. This is the second type of showing described by the Sixth Circuit in *Manzer*. *See Manzer*, 29 F.3d at 1084. However, Dorger is unable to make this showing. As the *Manzer* Court explained, this showing is essentially an argument that "the sheer weight of the circumstantial evidence of *discrimination* makes it more likely than not that the employer's explanation is a pretext or coverup." *Id.* (emphasis added). Although Dorger provides reasons for the conduct that led to her termination, she does not present any circumstantial evidence of discrimination.

In summary, Dorger has established a *prima facie* case of age discrimination. However, she has not demonstrated that there is a genuine issue regarding whether Allstate's legitimate, nondiscriminatory explanation for her firing is a pretext. Therefore, Dorger has not satisfied her burden of production under the *McDonnell Douglas*/*Burdine* test and cannot succeed on her age discrimination claim. Accordingly, Allstate's motion for summary judgment on this issue will be granted.

## III. Promissory Estoppel

Dorger's Complaint also asserts a claim of promissory estoppel. She claims that there is a genuine issue regarding whether she reasonably relied to her detriment on the representations by her supervisors that she could double-book when necessary to better serve customers. Dorger cites only one case in support of her argument that promissory estoppel is an available cause of action in an employment context. However, *McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10 (Ky. App. 1990), is materially distinguishable from the present case. *McCarthy*

involved a relied upon promise of employment benefits – not the promise that an employee could perform her duties a certain way.

Dorger has not identified any express statement between Allstate and herself altering the normal at-will employment relationship. Thus, under Kentucky law, Dorger is an at-will employee. *See Bergman v. Baptist Healthcare Sys.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004). In Kentucky, an at-will employee can be fired "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Wymer v. JH Prop., Inc.*, 50 S.W.3d 195, 198 (Ky. 2001). Several courts have held that promissory estoppel is available to fired at-will employees, but these cases are distinguishable because they generally involve promises regarding job security. *See, e.g., Foote v. Simmonds Precision Prods. Co.*, 613 A.2d 1277 (Vt. 1992); *Reasoner v. Bill Woeste Chevrolet, Inc.*, 730 N.E.2d 992 (Ohio 1999); *Lord v. Souder*, 748 A.2d 393 (Del. 2000). While Dorger claims that her supervisors represented to her that she could double-book, she does not claim that any promises were made regarding her job security.

The parties have not cited, nor has the Court found, any case law specifically addressing the issue of whether promissory estoppel is available to a former at-will employee who was fired for conduct her supervisors allegedly represented as being permissible. In the absence of any such authority, and in light of the fact that at-will employees can be fired for any lawful reason, the Court holds that promissory estoppel is not a viable cause of action in Kentucky under the specific circumstances presented by this case. Therefore, Allstate's motion for summary judgment will be granted with respect to Dorger's promissory estoppel claim.

**IV. Conclusion**

For the reasons stated above, it is hereby

**ORDERED** that the Defendant Allstate Insurance Company's motion for summary judgment [Record No. 32] is **GRANTED** as to all claims asserted against it by Plaintiff Darlene Dorger. All issues having been resolved, a final and appealable judgment will be entered on this date.

This 1st day of May, 2009.




**Signed By:**

***Danny C. Reeves*** DCR

**United States District Judge**